We'll now hear argument in 19-1922, Uniloc 2017 v. Apple. Mr. Jacobs, when you're ready. Thank you. Good morning, Your Honors, and may it please the Court. My name is Aaron Jacobs, and I represent the Uniloc parties in this appeal. Uniloc respectfully requests that the Court reverse the orders of the District Court below, which directed Uniloc to make public certain trade secrets of more than 100 third parties and Uniloc entities. I'd like to begin by focusing on three points. First, this appeal focuses on just 23 documents, nearly all of which are only lightly redacted to remove licensing and financial information. This information qualifies as trade secrets, and not even the interventor can find a case in which this sort of narrowly tailored information was forced into the public. Second, the District Court below explicitly stated that Apple's motion to dismiss for standing grounds did not depend upon any of the information that Uniloc here seeks to seal. And third, the District Court's order making public this information vitiated more than 100 confidentiality agreements with third parties, which are backed up by more than 100 protective orders in courts across this country. As interventors' brief itself recognized on page 14, the Ninth Circuit in Center for Auto Safety v. Chrysler Group emphasized that, quote, the presumption of public access is based on the need for federal courts, although independent, to have a measure of accountability and for the public to have confidence in the administration of justice. And as the cases show, this applies in the given case as to the particular issue at hand. Unless there are any particular issues or questions the panel would like me to address, there are several points I'd like to turn to. One question I had was with the third-party information. If we were to conclude hypothetically that the names of the licensees should be redacted, does that take away the vast majority of the concerns raised here with regard to the second round of redactions? Some, but not all, Your Honor. If you were to redact the names of the licensees, that would presumably address some of the issues, although you could still, for example, take a look at the approximate dates of the payments and line them up with cases. But that would only address the third-party issues, and specifically the licensee third-party issues. It would not address Unilock's concerns about its own trade secrets and its own interest in maintaining the confidentiality of those license numbers. So can I ask you this? Assume for purposes of this question that you're right that the legal standard of the balancing that the district court engaged in was not right. Nevertheless, as to the first order, the initial denial of the motion to seal, let's assume that the district court was right in saying that the request to redact was very substantially overbroad. Why doesn't that second basis suffice to support the rulings on appeal, which now include the second ruling denying reconsideration on a basis that could have been available to you at the first round? Why isn't that all by itself enough? You got one chance to tailor the redactions. You didn't do so adequately, and you don't get a second chance. Yes, Your Honor. As to that, I would say that the court refusing to give the party a second chance specifically to address licensing issues stands out. Even the interventor couldn't find a case in which that happened. In case after case, including those cited in Unilock's principal brief at footnotes 10 to 22, and then again on page 49, Unilock identified instances in which the Northern District of California repeatedly, and again in every instance we could find, granted a party the right to go back and readdress issues specifically relating to licensing amounts. We could not find a situation in which the court said, no, you over-redacted, and therefore you don't get a second chance. But have you presented a case, and I think I understand the sort of core notice idea or something behind this point, but do you have a case that says that it is an abuse of discretion to deny a narrowing opportunity in circumstances like this, particularly against the background of local rules that may not be explicit, but the reconsideration rule is pretty constraining? Your Honor, addressing those somewhat in reverse order, I would suggest that the question of reconsideration is a bit of a red herring in that we also appeal the original order. This is not an appeal just of the rejection of the motion for leave to file a reconsideration. Rather, we used that as a chance to give this court the chance to address those documents again and put into the record the retrenched redactions. Regarding whether it's an abuse of discretion, I can't find a case like that because no court has ever said this is the only chance you get to seal these documents. And this particular information, which every court in the Northern District of California ever to address this has said, these are trade secrets. I could not find a case in which the court said, no, you don't get another chance. If every single instance in which this particular issue has been addressed in the Northern District of California, if in every single one of those, every other party has been given the chance to go back and revise its redactions, then I would say it is an abuse. But we're talking about a circumstance. The district court has a lot of discretion in these matters. He's followed the case. And why is this? I mean, aside from the notice issue that Judge Toronto referred to briefly, why if a court had said, you're going to get one chance to do this, you wouldn't be here, I assume. Right? I mean, your suggestion is that you're arguing that you should always get a chance because that's what everybody else does. Are you positing that even if the judge had said to you first up, you're going to get one chance to do this, guys, and you better get it right. Would you still be here? I don't know, Your Honor. Are you suggesting that a court does not have the ability to let parties know because of scheduling or other issues that they better take proper care in the first instance so as not to drain the time for the district court and his staff? Are you suggesting that that in and of itself is an abuse of discretion? No, Your Honor. I would submit that if it was a published and known rule from the court that you get one and only one chance, that would be a different situation. But again, in this situation, every single precedent, every single example has given the parties the chance to go back and do it again. In retrospect, yes. It would have been the better practice if we had known, if we had ever seen anything like this, we would have asked for more time because, frankly, when we got the motion at 10.30 p.m. on a Friday and had to file the motions to seal the following Tuesday, we did not have time to address the line-by-line points. In retrospect, that would have been the better practice. But in this court and in every instance we have seen, the courts either sealed all of the documents or some of the documents if they were identified as redactions or granted the party the chance to go back again. If the court had said, you get one and only one chance, that is my rule, that would be one thing. But that's not the situation we see here, and we're not suggesting that the courts say that a district court can't do that. I think I asked this before, but I want to be sure. Do you have a case that says when, on the assumption that you're right about the premises here, that a consistent practice cannot be changed without advance notice, relevant to circumstances like this, even though it's not like changing a formal rule, but it's changing what you say is a uniform practice everywhere any of the parties here have been able to find, that it's actually an abuse of discretion, a case that says that? No, Your Honor, I don't have a specific case that says that. Okay, thanks. And it's also the case, is it not, that the district court, I mean, there's nothing that suggests that all district court judges in a particular jurisdiction have to follow the same rule, correct? Correct, they don't. But in this instance, everyone does. It's not an abuse of discretion. Yeah, but it's an abuse of discretion if you've got six judges, and then you get a new judge appointed, and that judge, under circumstances here, which let's assume we construe as being fairly extreme in terms of the initial submission, that a district court can't decide on his or her own that they want to be a little more stringent and scrupulous about how they review these documents. What's the problem with that, right? The problem is that it does not give the party notice on how it should have handled the matter at that point. Perhaps going forward it would, but from that point it wouldn't. In terms of extreme, I would address, again, the case of Apple versus Samsung, the appeal that this court heard and that Your Honour Chief Judge Prost wrote the opinion for. If you recall in that instance, Apple and Samsung filed more than 30 motions to seal, and Apple sought to seal 250 documents spanning thousands of pages. Those motions were denied once, twice, three times, four times, over three hearings, and Apple reduced its focus from 250 documents to 30. In each instance, Apple was given a chance to come back again and again. That is the practice we have seen in the Northern District of California. That is the practice we have seen in the cases cited by our principal and responsive briefs. In that instance, Judge Koh did grant the motion to seal certain documents, specifically including licensing and other financial terms. Again, she sealed the very information that we're trying to seal here, but she denied the motion that's got certain other materials. So when that case finally made it to this court, Apple reduced the amount it sought to seal yet again, just 14 documents, barely 5% of what was originally at issue. And even after Judge Koh gave Apple four sets of pleadings and three hearings, this court concluded that Judge Koh abused her discretion in not sealing those remaining materials. Based upon what Your Honors have been saying, you would almost suggest that, well, she gave you one try and that was enough. She gave them four tries and yet still, this information, Your Honors directed to seal that information. So even that district court, again, this court determined abused its discretion in not sealing Apple's documents. Even that district court recognized that licensing and financial information, which is what Unilock here seeks to seal, is sealable and should be sealed. The district court of Northern District of California has reaffirmed this point again and again. Licensing and financial terms are sealable and should be sealed. And to call out and deny Unilock and only Unilock, that protection, I submit, Your Honors, was an abuse of discretion. So how many tries do you get? What if you had gotten one try and just pared it down to 60% of what you were asking for? And the judge clearly, within his discretion, said that was really way overbroad. Would we still be here on try three? Your Honors, I would submit that— I see my time has expired. Can I answer the question? You can answer, and I think Judge Taranto may have another question, which you should hear. But go ahead. Sure. I would agree that at least one try is sufficient. If the district court judge made then a mistake of law or applying the laws of the facts, or for that matter, a mistake of practice, then I would submit that there is still an issue that could be appealed to this court. I certainly agree that abuse of discretion is a very high standard. But I would also submit that the judge in the court below did abuse his discretion. And so even if a party is given a second chance and the judge says, No, I still do not agree with this, it's all going to be public. If there's information in there that should be sealed and is clearly sealable based upon the precedence of that court, then there would be an issue to appeal based upon the abuse of discretion standard. Judge Taranto, did you have a question? Yeah, so my quick question. Do you happen to remember in Apple's Samsung, was the argument made or addressed by this court that irrespective of the details of what was denied, sealing treatment at rounds two, three, and four, it was sufficient to affirm, Judge Koh there, that those requests came too late since the initial requests were overbrought? No, I don't believe that was addressed in any of those cases. In each instance, Judge Koh said, This is too much, come back. And in each instance, Apple did. And in each instance, Apple dropped more and more documents. And then again, after Judge Koh's final ruling. So you're relying on the Apple Samsung for kind of what happened, in fact, not for a ruling to the effect that overbred that round one can never be sufficient to deny an opportunity for a round two. Well, Your Honor, there's a great deal of useful precedent in the Apple v. Samsung case that applies, and I would suggest this is positive in this matter. But as to that one particular issue, I would agree that it doesn't address that particular issue. Yes, Your Honor. Okay, thanks. All right. Well, thank you. And we'll restore your rebuttal time. Let's hear from Ms. Moss. Are you there? Yes. Thank you, Your Honors, and may it please the Court. There are a number of issues in the briefs, and I heard the argument focus on a set of particular issues on the question of notice, on the applicability of Apple v. Samsung and the number of tries there, and the district court's discretion in applying the presumption of public access and managing its docket, unless there are other questions that the Court has first. No, I guess I would very much like you to address that. First of all, the premise that nobody has pointed to another instance where a rejection of a sealing request as overbroad was not followed by an opportunity to narrow. Yes. Well, frankly, Your Honor, we didn't find a case with initial redactions that were anywhere near this excessive. I mean, we noticed this case from seeing the docket and trying to read the pages of the standing motion, and the entire pages of it were redacted, entire legal argument sections were redacted, and none of the cases that we're aware of that are being cited are, in fact, presidential decisions and the district court here having seen the excessiveness of the first set of redactions and also having seen the support that was applied, which were largely litigation counsel's assertions. But then on the second round, when the district court had a set of revised redactions, but redactions that were still excessive, that still included the request to seal exhibits in their entirety, still requested to seal information that's in the district court's opinion. There are still portions of that that are redacted. And the district court looking at the second set that were still overbroad, and what was supplied to support them were more generalized assertions of the same type that had been rejected. And under those circumstances, the other cases that counsels recognize simply don't come close to that situation. Apple v. Samsung, importantly, what happened between the different bites at the Apple was an entire trial, a jury trial. The analogy between Apple v. Samsung, we think, supports our position, because there you had initially a large list of potential trial exhibits. And it's very common that the parties have a long list of things they think may get into trial, and that doesn't happen. And here the remaining exhibits ended up not being admitted to trial. It was clear that they couldn't have been part of the jury's verdict because the jury didn't know that they existed. We think that is an example of an important change in circumstances that might justify a second try. Here, these are filings on a dispositive motion. And what happened was there was a hearing that couldn't even substantively address the details because of this ceiling. All of the submissions that were supplied the second round were available at the first. And turning to the notice question, it is true that EFF filed its motion to intervene and seal the day before the hearing. But that's because we really didn't want to intervene. We reached out to the parties in November, and in December we had a long meet and confer. Well, just to be clear, at least I wasn't understanding this question of notice as having anything whatsoever to do with EFF, but rather with the idea that an overbroad redaction request was, at least according to what's being cited, for the first time not accompanied with an opportunity to narrow. And maybe you're saying, well, yeah, that's the first time, but there are no other circumstances where the initial request was comparably overbroad. But I guess just on the premise, I'm not hearing you saying, yeah, there are other cases in which, under any circumstance, there was no opportunity to narrow an initially overbroad request. And I assume you're also saying even doing it for the first time is perfectly legally sufficient. Sorry, can I clarify what you mean doing which the first time? Saying overbroad, go away, these documents are now going to be in the public record unless you come back and show us something that you couldn't have told us the initial round under the three-pronged reconsideration standard. Oh, returning to the reconsideration question, the district court, the rules require there to be a basis. That's new. And I think the point about our notice point in the beginning is that an appellant has suggested that it wouldn't have been possible to have provided these additional supports. And, in fact, they had months and months where they could have done that. And we did put them on notice that the redactions were overbroad. And, I mean, this is entire pages of the legal argument section were redacted. No, no, no, but again, the notice we're talking about, Ms. Moss, is the notice that they didn't recognize because of the practice in the district or otherwise that they would not get another chance if the district court, in fact, concluded that their initial request was overbroad. That's the notice, right? And you don't know of another circumstance where that has happened. Your argument is, however, that this was extreme. Yes, that's correct. They don't have a case in the district offhand where that happened. But the rules do require narrowly tailored redactions. That's part of the rules. I think reading the local rules should have put the parties on notice that they had to comply with them. And yet, as far as we know, every single district court in every single case that has been cited to us, including in the Northern District of California where this rule has had the same language for a long time, has given an opportunity to narrow. I mean, we do not see a case there where there has been anything that is close to this. And to be honest, there are, unfortunately, in a lot of patent cases in particular, district courts don't always do the rigorous analysis and scrutiny of the assertions that are supplied in support of a sealing request. And there may indeed be examples of situations where courts didn't scrutinize as closely as Judge Alsup did. But we think that Judge Alsup was correct and well within his discretion to undertake that rigorous scrutiny and to look at the assertions that were provided, compare them to what was being sealed, and see if they could support that and stand up. Well, the point you make, I think, is correct. The point you made where, if we're being honest, a lot of judges excessively just allow these redactions. But that's kind of the reservation we're having, which is whether they have a sufficient basis to think that this was going to be a problem or at least they wouldn't get a second chance. Can I just move you on to one question where we started with your friend on the other side, which is what about the third-party names of the licensees? I mean, even if, for the reasons you say, there's nothing that's ever been this excessive at the get-go, why do we penalize or apply an extraordinarily stringent rule to the interests of third parties who don't bear any responsibility for whatever excesses were included in the initial submission? Frankly, because appellant isn't taking them seriously. As your Honor suggested, the way to protect the identities of these licensees would be to redact just their names and disclose the substantive information anonymously. And that has never been a request that was before Judge Alsop. It's not even a request that here on this third try, appellant is willing to accept. And I think the fact that the driving concern isn't third-party licensees' information. You'll see that on Appendix 576 to 577, two third-party licenses said they agreed to disclose everything, all the information. And then it says, Unilock still views the amounts these licensees paid for their licenses as highly confidential and sensitive financial information of Unilock. But wait a minute. Some licensees have come in and objected and made a case. Even Judge Alsop refers to that in certain of the exhibits in this case, that licensees have filed. I don't know how specific it was, but licensees have come in and voiced their concerns about being identified. Is that not right? Well, I believe that they have voiced concerns about being identified, but what we are saying is that Unilock has never suggested or accepted simply hiding the licensees' names. That would be the narrow and effective way to protect the identity of licensees, would be to redact their names. Unilock has not taken that approach and has not accepted it. And we think the fact that it is not amenable to that solution reflects the fact that the privacy of third-party licensees is not the driving rationale for these ceiling requests. I think if they're heading towards... You know, I guess part of your answer, I'm a little confused, because part of your answer seems to be that that wasn't really an issue before the district court. But he acted like that was an issue. At Appendix 36, he specifically has a paragraph, short as it may be, that explicitly addresses this, this question, redacting licensing information, including their identity. And he says no. Well, to be clear, the licensing, the table that's at issue is a summary table that has licensee names, the date of the license, and then the amount. Why don't you please finish answering the question? Our point is that if the request before Judge Alsup had been just to redact the licensee name column in that table, we would be having a very different conversation. And even on appeal, we're saying that the question is not can the licensee name column be sealed. That's not the question. Appellant has insisted on bundling licensee names with the date of the license, with the amount. And so we don't have before us the question of just protecting those third-party identities. And if there were a proposal to hide the names of those licensees, that that would be a very different type of request, and it simply wasn't before Judge Alsup, and he couldn't have abused his discretion in denying a request that nobody made. Okay, can I just ask one follow-up question on that? I think Mr. Jacobs made a passing reference to this. If the names were gone, would the dates essentially enable you through Westlaw or other searches to quite quickly identify what the names are? I don't believe so. I mean, to the extent that they were settlements of litigation, and there certainly are services and databases that kind of keep track of litigation, and there'll be a dismissal order or voluntary dismissal or something, and one could figure that out. Is that wrong? I took it there was something on the order of what I just said that Mr. Jacobs was adverting to. To be honest, John, I don't know. I don't know how far or if at all those cases proceeded in litigation. I don't know that any of them were filed on court dockets. I certainly don't know which of them were. It looks like of two that are disclosed, the licensees go back to 2010. So I don't know and don't have any grounds based on what is publicly available to think that we could reverse engineer based on the dates. Okay, thank you. Thank you. Mr. Winard? Yes, may it please the Court? Doug Winard on behalf of Apple. I've only got four minutes, so I'm going to jump straight into the questions the Court has raised. First, regarding prior cases where a district court only gave one chance, Apple cited such a case on page 11 of its brief. That's the Nevro Corp case at Appendix 931. In that case, the district court rejected overbroad requests that were justified solely by boilerplate statements and required the parties to, if they wanted to fix that, file a motion for reconsideration, which was also denied, and the party requesting this was ultimately sanctioned. So there is, as Apple pointed out in its brief, there is precedent for courts giving only one chance. What district was that case in? Excuse me, where was that case? Sorry, Your Honor. It was in the Northern District of California. It was applying the same rules that Judge Alsup was applying here. And, in fact, it's not cited in our brief, but Judge Alsup had done something similar in the case of Lew v. Mahl Laboratories, Inc., civil case number 1205409. In that case, the party had wholly failed to provide a declaration in a timely manner, as the rules required, and the court did not give them a second chance. So we agree that courts have discretion in this matter to give multiple chances, but they also should all have, and we think the local rules allow, to give them discretion to give parties only one chance, or set a high standard, such as meeting the reconsideration standard, Local Rule 7-9, before they can come back and try to fix what they should have done right in the first place. So on the second point, I think, about the third-party information, I think Apple would agree that Unilock has provided compelling reasons to seal that information, and that it is sealable. Apple would not oppose a remand for instructions to seal the information. I think it's the table in Exhibit A to Apple's original motion below. That information, to us, makes good sense, but we also do want to be sensitive to this. Let me just be clear on that. So you're saying that you would not oppose taking the table, which does not just consist of the licensee's name, but consists of all the information about the licenses? Yeah, I think it's names, amount, and time. I think there are, I don't know for all of the cases, but at least some of them, I think there is a distinct possibility that you could match them, certainly in amount and time, to at least some of the cases that were settled. And so for that reason, we do think it would make sense, and compelling reasons were shown for that table to seal that, to respond to the court's question on that. Can you just say again, you said, besides the Nevro case, which you cited on page 11 of your red brief, you said you had identified another case from NDCal, in fact, from Judge Alsup, Lew against somebody, and how do you spell Lew? L-O-U, against MAH Laboratories, M-A Laboratories, Inc. That case was more... And what year was that? 2013. Okay. So often district courts do provide multiple chances, but I think in this case, it was, as the district court pointed out, a lot of what UNILOC was trying to seal included citations to Federal Circuit case law and things that this court, I think, had called out in in re violation of Rule 20 AD as matters that should not be sealed. And so the district court, in that context, saw that and decided to set up essentially a higher standard to reconsider the original ruling denying the request in its entirety, as Local Rule 79.5 contemplates a district court is allowed to do. What about the alternative of sanctions? I mean, of course, I'm not recalling any particular case, but I know in our experience, when people overreact in the old days of confidentiality over markings, I think our course would be if there was a significant overreaction, including names of cases and kind of things you're talking about here, the court would do a notice to show causes to why the party shouldn't be sanctioned. But what the relief provided was not that we don't allow them to have any confidentiality markings at all because of that. Do you understand my question? Yes, Your Honor. And just to answer, I know my time is up. I think it would have been well within the district court's discretion to follow that path, and I believe that is the path that the district court followed in Nevro Corp. Here, the district court also had discretion to first apply the local rule requiring narrowly tailored requests, and upon finding that they were far from narrowly tailored, as set in Appendix 32, then have the discretion to grant leave or not under Local Rule 79. So, yes, the district court could have taken that path, and it would have been possibly within its discretion to explore that, but it also acted within its discretion to act as it did. And can I just double-check something? In Nevro, when there was an opportunity given for reconsideration and the reason for rejection of reconsideration was that the requests were still unjustified, not just that they could have been made at the first round. Is that right or wrong? Yes. So my understanding of reading the other cases, and we didn't cite the follow-on cases, but the court there found that the requests were not justified even at the second time around. Right. So that's not really quite precedent. I know district court decisions are not precedent, but that doesn't really stand for the proposition that you don't get a second chance to do it right. Your Honor, I would say it stands for the proposition that the second chance could be that you have to meet the Local Rule 79, and that's what happened in that case. You have to meet the standard for reconsideration. And was reconsideration denied on the ground that everything you are now saying you could have said before or that you still have not justified some narrower set of proposed redactions? Your Honor, I don't recall exactly. That would be the key point, I think, right? Your Honor, I would absolutely agree that if it addressed the failure to have done it right the first time, I kind of explained that. It would be fully on point. I do think it still is helpful to show that district courts do have discretion and have exercised that in the past to require parties, if they want a second chance in some cases, that they have to show that reconsideration under Rule 79 is appropriate. Okay, thank you. Mr. Jacobs, we'll restore your two minutes of rebuttal. Mr. Jacobs? Yes, Your Honor, thank you. To clarify, what I was saying before was that there were no cases in which the court did not grant a narrowing of redactions on licensing information. That was not apparently at issue in NEVRO, which, for example, at Appendix 932 refers to an email from one person to another as opposed to licensing. Again, to quote Judge Koh, pricing terms, royalty rates, and minimum payments of licensing agreements plainly constitute trade secrets and are thus sealable. Can I just ask you for clarification? I know you have very little time left, and I don't want to use it, but your friend from Apple, as I understood, just expressed that he would not oppose this table of the licenses. Is there more stuff that the licensees are arguing about, or is most of the information that's in dispute included in the table that Mr. Wynard referred to? The third-party licensees are only concerned about that document. There are other third parties that are concerned about other matters, for example, the loan agreements and other financial information that have third-party information in them. But in terms of the licensees, it's only that one table. Okay, thank you. You can keep going. I appreciate that. In terms of overbreadth, we see cases from the district court, and specifically the district court, Judge Olson, both before and since in which he sealed the exact same sorts of documents based upon even thinner attorney declarations. Unilock cited these in its reply brief at pages 9 through 10. So, for example, in the Juniper case, there was a declaration from a partner at the party's firm saying, quote, I'm informed and believe that Exhibit 7 is a full, unredacted confidential license agreement between Juniper and a third party, which information that falls within the definition of trade secrets. And then one week after Judge Olson refused to seal anything from Unilock, Judge Olson granted this party's motion to seal the entire license agreement based upon that one sentence. Finally, Your Honor, Unilock's licensing terms and loan information are the equivalent to Apple's source code to Apple. It is the lifeblood of a company that relies upon licensing its intellectual property. And to let this fall to the public would be incredibly damaging. As court after court has recognized, licensing information is confidential and should be sealable. If you take an example, if I may just conclude briefly, Your Honors. Yes, finish your sentence. Thank you. Imagine this. Imagine a third party knew that Unilock had licensed a patent, say, four times at four slightly different rates. That third party would start its negotiations with a sealing of the absolute lowest rates, and things could only go down from there. By publishing this information or the other financial information, Unilock would be indelibly and permanently prejudiced in all future such negotiations. Thank you, Your Honor. We take your point. We thank both sides, and the case is submitted.